UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 2:16-CR-00064-JRG |
| | ) | |
| vs. | ) | |
| | ) | |
| KRISTOFER M ORRICK, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court pursuant to 28 U.S.C. § 636 and standing orders of the District Court. Before the Court are Defendant Kristofer Orrick's ("Orrick") motions to suppress his statements and to suppress the property seized from his person and apartment. [Doc. 15, 16]. The Government has filed its responses in opposition, and the Court conducted an evidentiary hearing on the motions on October 21, 2016. The motions are now ripe for consideration.

**I.    PROCEDURAL BACKGROUND**

On June 14, 2016, a federal grand jury returned an indictment against Defendant Kristofer Orrick charging him with knowingly, intentionally, and without authority, possessing with the intent to distribute a quantity of marijuana, a Schedule I controlled substance, in violation of United States Code Title 21 section 841(a)(1) and knowingly possessing firearms in furtherance of a drug tracking offense in violation of United States Code Title 18 section 924(c)(1)(A). On August 17, 2016, Orrick filed a motion to suppress statements taken in violation of his Fifth, Sixth, and Fourteenth Amendment rights. Additionally, he filed a motion to suppress the property seized from his person alleging he was detained and searched without reasonable, articulable suspicion, arrested without probable caused, and that the search and seizure of his person was unreasonable

1

and conducted in violation of the "plain feel doctrine." Defendant also sought to suppress the property seized from his apartment alleging: (1) that the search warrant executed in this case lacked probable cause; (2) that the affidavit accompanying the search warrant lacked the sufficient nexus between the property to be searched and the suspected illegal drug activity; and (3) that the information contained in the affidavit was stale. With respect to the validity of the warrant, Defendant alleged that the affidavit contained deliberately and/or recklessly omitted information that was pertinent to the determination of probable cause. Finally, he argued that any sworn testimony by the issuing officer was not recorded, transcribed, and made part of the affidavit pursuant to Federal Rule of Criminal Procedure 41(d)(2)(C).

## II.    FINDINGS OF FACT

On November 1, 2015, Officers Craig Ferguson and Jared Glover of the Kingsport Police Department ("KPD") both received calls from dispatch reporting that Apartment 5 at 306 Spring Lane, Kingsport, Tennessee, possessed an odor of marijuana, and that the resident was known to possess firearms. Officer Ferguson was the first to respond to the apartment, arriving at approximately 1:00 a.m. He parked in the public parking area, which faced the back of the apartment row. As he began approaching Apartment 5, Officer Ferguson smelled a strong odor of "raw" marijuana, which, as he indicated, has a distinctive smell from burned marijuana. Based upon his training and experience, Officer Ferguson testified he believed the smell to be marijuana. He reached the back door and knocked. Although lights were on, no one answered the door. He then knocked once again, still receiving no answer.

Despite the lack of response, Officer Ferguson opted to wait in the parking lot to see if anyone would leave the apartment. During this time, Officer Glover arrived and went around the apartment row to watch the front door. Within approximately ten minutes, Defendant exited the

2

apartment and appeared to be walking towards the parking lot. Officer Ferguson approached him from the side of the parking lot and asked if he lived in the apartment. Defendant responded that he did not. Officer Ferguson then asked who lived at the residence. Defendant informed him that a friend of his lived there who was not currently home.

Officer Ferguson next asked Defendant if he possessed any weapons on his person. Instead of responding, Defendant made a furtive movement with his right hand towards his right hip, which appeared to Officer Ferguson as him reaching for a gun.[1] Immediately, Officer Ferguson grabbed Defendant's right arm. As he grasped Defendant's arm, Officer Ferguson simultaneously saw the bottom of a holster sticking out from below Defendant's shirt at his right hip. Officer Ferguson then secured the weapon from Defendant and asked if he had a concealed weapon permit. Defendant responded negatively. Officer Ferguson next placed Defendant in handcuffs and effectuated a search incident to arrest.[2] The search uncovered brass knuckles, two containers of marijuana, a pipe, and $1,870.00 in cash. Defendant was charged with simple possession, drug paraphernalia, and carrying a weapon with the intent to go armed.

After Defendant was handcuffed, he was placed in Officer Ferguson's patrol car to be transported to Kingsport Detention Center for booking. It is undisputed that Defendant was never advised of his *Miranda* rights. At some point between being placed in the patrol car and arriving at the Detention Center, Defendant admitted to living at the apartment and refused to consent to his apartment being searched. Sometime after arriving at the Detention Center, Sergeant Gerald

---

[1] At some point during the encounter before Officer Ferguson asked Defendant if he possessed any weapons, Officer Glover returned from the front of the house to witness the interaction.

[2] Officer Glover testified that he recalled Defendant was placed in handcuffs before Officer Ferguson retrieved the gun from the holster and inquired about the permit, but could not be one hundred percent certain in his memory of the order of events. He testified that he would have no reason to doubt the veracity of Officer Ferguson's memory and testimony. The Court finds as a matter of fact that Officer Ferguson's order of events to be the correct version.

3

Hurd and Detective Robert Coffey spoke to Defendant while he was in the holding cell. Sergeant Hurd testified that they went to ask Defendant if he would change his mind and consent to a search of his apartment. While they were with him, Defendant made the following statements: (1) that he lived at the apartment; (2) that he lived in the apartment alone; and (3) that he had lived in the apartment for at least one winter. Defendant once again refused to consent to a search.[3] At no point did Sergeant Hurd or Detective Coffey *Mirandize* Orrick.

After Defendant declined to grant consent, Sergeant Hurd began filling out the necessary paperwork to obtain a warrant to search Defendant's apartment. At 6:00 a.m. on November 1, 2016, Sullivan County (Tennessee) General Sessions Court Judge Ray Conkin signed the search warrant. The warrant was timely executed, and during the search, numerous firearms, ammunition, and over ten pounds of marijuana were seized.

### III. DISCUSSION

#### A. Motion to Suppress Evidence from Person [Doc. 16]

##### i. Initial Encounter

Defendant contends that: (1) he was detained and searched without reasonable, articulable suspicion, (2) the pat down of his person was not supported by reasonable, articulable suspicion, (3) the search and seizure of the contents on his person were unreasonable and in violation of the "plain feel doctrine," and (4) he was arrested and searched without probable cause. The Fourth Amendment guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures. . . ." U.S. Const. amend. IV. The "ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006).

---

[3] After Sergeant Hurd left, Detective Coffey and Defendant had a brief conversation alone. The Government, however, has represented to the Court that it does not intend on introducing the contents of this conversation at trial or Defendant's refusal to consent.

There are three types of permissible encounters between the police and citizens: "(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause." *United States v. Smith,* 594 F.3d 530, 535 (6th Cir. 2010). "While purely consensual encounters are not subject to Fourth Amendment scrutiny, *see Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), all seizures—including brief investigatory stops—receive this protection, *see Smith,* 594 F.3d at 535." *United States v. Beauchamp*, 659 F.3d 560, 566 (6th Cir. 2011).

"A seizure occurs when a reasonable person would have believed that he was not free to leave." *Mitchell v. United States*, 233 F. App'x 547, 550 (6th Cir. 2007). "In order to determine if a seizure has occurred, [courts should] look to 'all of the circumstances surrounding the incident' and consider whether 'a reasonable person would have believed that he was not free to leave.'" *Beauchamp*, 659 F.3d at 566 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). "Whether an encounter is consensual depends on the officers' objective behavior. The officers' subjective beliefs are irrelevant, unless communicated to the defendant." *Mitchell*, 223 F. App'x at 550. In *Mitchell*, two officers approached the defendant after hearing gun shots and asked him if he heard the shots and if he was armed. *Id.* The Sixth Circuit held that this interaction was a consensual encounter as "no physical force or show of authority" occurred. *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). Specifically, the court noted that the officers "did not have the squad car lights on or guns drawn; they simply approached on foot, and asked two questions." *Id.* Similarly, in *United States v. Waldon*, 206 F.3d 597, 603 (6th Cir. 2000), an officer approached the defendant, mentioning that he was investigating a bank robbery, asked what the defendant was doing in the area, and eventually requested identification. The court found that this behavior did

5

not rise to the level of a seizure because the officer did not engage in overbearing or coercive behavior, and "there was no evidence suggesting the officer conveyed a message that compliance with his requests was required." *Id.*

In the instant matter, Defendant argues that he was detained and subsequently searched without reasonable, articulable suspicion. The Government asserts that when Officer Ferguson initially approached and questioned Defendant up until the he grabbed Defendant's arm, the interaction constituted a consensual encounter. The Court agrees with the Government. The facts here are analogous to both *Mitchell* and *Waldon*. When Officer Ferguson initially approached Defendant, he did not have his gun drawn, his squad car lights were not on, nor did he engage in any physical force or show of authority. He merely asked a few questions. Although, similar to *Mitchell*, Officer Ferguson's final question was weapon related, nothing inherent about this type of question is coercive or a show of force. Accordingly, until Officer Ferguson physically grabbed Defendant's arm, the interaction was consensual, and, accordingly, no seizure occurred.

### ii. Seizure

The Government does not dispute that once Officer Ferguson grabbed Defendant's arm, a seizure occurred. While Defendant asserts that the seizure occurred without reasonable, articulable suspicion, the Government counters that the encounter was permitted pursuant to *Terry*. In *Terry*, the Supreme Court held that "[b]efore conducting a temporary investigatory stop, a law enforcement officer must have a 'reasonable' suspicion of criminal activity based on 'specific and articulable facts' known to the officer at the time of the stop." *Embody v. Ward*, 695 F.3d 577, 580 (6th Cir. 2012) (quoting *Terry*, 392 U.S. at 21-22)). "The length of the stop and the extent of intrusion must be 'reasonably related in scope to the circumstances which justified the interference.'" *Id.* (quoting *Terry*, 391 U.S. at 29). "Officers must 'diligently pursue[] means of

6

investigation that [are] likely to confirm or dispel their suspicions quickly.'" *Id.* (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985)). Additionally, it is "well-established that safety concerns are an integral factor in the *Terry*-stop equation." *United States v. Campbell*, 549 F.3d 364, 372 (6th Cir. 2008). In *Waldon*, although the initial interaction between the defendant and officer was consensual, it transformed into an investigatory stop after the officer noted that the defendant "had red dye stains on his fingertips, pants, and around his pockets," "was near the area where the bank robber was last seen," the defendant "generally matched witnesses' descriptions of the bank robber," and because he "gave evasive answers when asked what he was doing in the area." 206 F.3d at 604. The court found these pieces of objective evidence to justify a *Terry* stop. *Id.*

In the instant matter, the consensual encounter quickly transformed when Defendant furtively moved his arm to his right hip, causing the officer to grab his arm in response. During the hearing, Officer Ferguson testified that he seized Defendant's arm because the movement put him in fear for his safety and caused him to suspect that Defendant possessed a gun. In addition to Defendant leaving an apartment that emanated a strong odor of raw marijuana late at night, when asked if he possessed a weapon—rather than verbally respond—Defendant immediately made a movement that appeared to Officer Ferguson to indicate that he was grabbing for a gun. *See United States v. Caruthers*, 458 F.3d 459, 466 (6th Cir. 2006) ("Furtive movements made in response to a police presence may also properly contribute to an officer's suspicions" of ongoing criminal activity.) At that point, Officer Ferguson possessed reasonable, articulable suspicion that criminal activity was afoot based on the totality of the circumstances and also reasonably feared for his safety. *See Campbell*, 549 F.3d at 372 (the focus is on "whether a reasonably prudent person in the circumstances would be warranted in believing that his safety or that of others was

7

in danger"). Officer Ferguson certainly had a reasonable belief based on Defendant's conduct and strong odor of marijuana smell coming from the apartment that he well may have been armed and dangerous. *See United States v. Noble*, 364 F. App'x 961, 965 (6th Cir. 2010) (citing *Terry*, 392 U.S. at 27)). The Court finds Defendant's seizure does not run afoul of the Fourth Amendment as a reasonably prudent person would be warranted in believing Defendant posed a danger to Officer Ferguson's safety based on his conduct.

### iii. Arrest and search

Further, Defendant contends that the search and seizure of the contents of his person was unreasonable and in violation of the "plain feel doctrine." The Government, however, asserts that the "plain feel doctrine" is not applicable because the search of Orrick's person occurred as a search incident to arrest. When Officer Ferguson seized ahold of Defendant's arm, he simultaneously saw a holster sticking out of the bottom of Defendant's shirt, which indeed held a loaded firearm. Immediately, Officer Ferguson secured the loaded weapon from Orrick and asked if he had a concealed carry permit. Defendant responded in the negative. Tennessee Code Annotated section 39-17-1307(a)(1) provides that "[a] person commits an offence who carries, with the intent to go armed, a firearm or a club." At that point, Officer Ferguson possessed the probable cause necessary to arrest Defendant, who was illegally carrying a loaded weapon and just exited a residence reeking of raw marijuana. Officer Ferguson promptly placed Defendant in handcuffs, effectuated an arrest, and executed a search of his person.

The Supreme Court in *Minnesota v. Dickerson*, 508 U.S. 366, 374-75 (1993), explained that under the "plain feel doctrine," "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right

8

of access to the object, they may seize it without a warrant." On the other hand, the Court has explained the following concerning a search incident to arrest:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. . . . There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

*Riley v. California*¸ 134 S. Ct. 2473, 2483 (2014).

Based upon a plain reading of these doctrines, it is evident that Officer Ferguson's search of Defendant was conducted incident to arrest. As the arrest was based upon probable cause, the search was proper. Thus, the evidence discovered from the search and subsequently seized—the two containers of marijuana, pipe, brass knuckles, and cash—were not obtained in violation of the Fourth Amendment. Accordingly, this Court respectfully RECOMMENDS that Defendant's motion to suppress regarding the property seized from his person [Doc. 16] be DENIED.

### B.  Motion to Suppress Statements [Doc. 15]

Defendant also seeks to suppress all statements made after his arrest as he was never properly advised of his *Miranda* rights. In response, the Government argues that the few statements that were made should not be suppressed because they were biographical in nature, and thus the failure to give *Miranda* warnings is not an issue.

It is well-established that before a suspect may be interrogated in custody, police must first read the *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436 (1966). An "interrogation" encompasses "not only [] express questioning, but also any words or actions on the part of the police that the police know are reasonably likely to elicit an incriminating response from the

9

suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). *Miranda* warnings, however, are not required for questions "'reasonably related to the police's administrative concerns,' such as the defendant's name, address, height, weight, eye color, date of birth and current address." *United States v. Pacheco-Lopez*, 531 F.3d 420, 423 (6th Cir. 2008) (quoting *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990)); *see United States v. Clark*, 982 F.2d 965, 968 (6th Cir. 1993) ("ordinarily . . . the routine gathering of biographical data for booking purposes should not constitute interrogation under *Miranda*").

"This 'booking exception' to *Miranda* requires the reviewing court to carefully scrutinize the facts, as '[e]ven a relatively innocuous series of question may, in light of the factual circumstance and the susceptibility of a particular suspect, be reasonably likely to elicit an incriminating response.'" *Pacheco-Lopez*, 531 F.3d at 423-24 (quoting *United States v. Avery*, 717 F.2d 1010, 1024 (6th Cir. 1983)). "Where the booking exception does not apply to statements made before administration and voluntary waiver of *Miranda* rights, those statements are irrebuttably presumed involuntary and must be suppressed. *Id.* (citations omitted).

Indeed, Defendant made only a few statements that are now at issue. As discussed *supra*, after Defendant was handcuffed, he was placed in Officer Ferguson's patrol car to be transported to Kingsport Detention Center for booking. It is undisputed that Defendant was never advised of his *Miranda* rights. At some point between being placed in the patrol car and arriving at the Detention Center, Defendant admitted to living at the apartment and refused to consent to his apartment being searched. The Government does not intend to admit into evidence Defendant's refusal to consent. Furthermore, defense counsel during the hearing conceded that Defendant's admission that he lived in the apartment was biographical in nature. Certainly, Officer Ferguson had the ability by that point to review Defendant's driver's license. Additionally, this is

10

prototypical information that would be obtained during booking. Accordingly, the Court RECOMMENDS these statements not be suppressed.

The answer concerning the statements made at the Kingsport Detention Center, however, is not as clear. When Sergeant Hurd and Detective Coffey visited Defendant while in the holding cell, he made the following three statements: (1) that he lived at the apartment; (2) that he lived in the apartment alone; and (3) that he had lived in the apartment for at least one winter. Once again, defense counsel agreed that Defendant's statement acknowledging that he lived in the apartment was biographical in nature, and accordingly, should not be suppressed. However, defense does assert the other two statements were in response to questions that were reasonably likely to elicit incriminating responses. Conversely, the Government argues that these statements also concerned biographical data that related to Orrick's ability to consent to the search of his residence and permitted under the booking exception.

In *Pacheco-Lopez*, the Sixth Circuit emphasized the necessity of careful, case-by-case analysis that is necessary in determining whether questioning is merely biographical or if it falls within the scope of *Miranda* protections. 531 F.3d at 424. There, the defendant was asked a series of questions that, on the face, may seem innocuous. *Id.* The court noted that

> [s]ome of the initial questions would not—in isolation—implicate *Miranda*; at the very least asking the defendant his name is the type of biographical question permitted under the booking exception. But asking [the defendant] where he was from, how he had arrived at the house, and when he had arrived are questions "reasonably likely to elicit an incriminating response," thus mandating a *Miranda* warning. . . . asking questions about when and how [the defendant] arrived at a household ostensibly linked to a drug sale, as well as his origin, are relevant to an investigation and cannot be described as related only to securing the house or identifying the defendant.

*Id.* Accordingly, because the police did not advise the defendant of his *Miranda* rights before these questions, the answers were "presumed compelled and excluded at trial in the State's case in chief." *Id.*

11

Conversely, in *United States v. Clements*, 333 F. App'x 981, 990 (6th Cir. 2009), the Sixth Circuit found the questioning at issue to be biographical in nature. There, the defendant was asked about his birth date, and he refused to answer. *Id.* at 989. During trial, an officer commented on the fact that defendant exercised his right to remain silent. *Id.* On appeal, the defendant argued the officer's comment was improper and violated his due process. *Id.* In response, the Government countered that this was a routine booking question and thus not interrogation under *Miranda*, and accordingly, the comment on his refusal to answer did not create prejudice or imply guilty. *Id.* at 990. The Court agreed with the Government, holding that the "booking question about [the defendant's] birth date [did] not implicate *Miranda*. And [his] refusal to answer did not create an inference of guilt because his answer—or refusal to answer—did not incriminate him for the crimes charged." *Id.*

In the instant matter, although the Government contends these two statements were in response to biographical questions, it is easy to envision how these two responses could incriminate Defendant concerning his pending charges. While in isolation these questions seem innocuous and do not appear to implicate *Miranda*, knowing the number of people who live in a residence where drugs are allegedly distributed from may directly assist in either the prosecution or defense depending on the answer. Additionally, the length of a residency could potentially implicate the owner if the Government seeks to allege a time frame of when the distribution of drugs occurred. Although it is evident that confirming Defendant's address is a routine booking question and biographical, the other questions, in light of the factual circumstances, may be reasonably likely to elicit incriminating responses. *See Pacheco-Lopez*, 531 F.3d at 424. The types of questions were also directly tied to the officers' attempts to further their investigation. Accordingly, this Court respectfully RECOMMENDS that Orrick's motion to suppress the

12

statements [Doc. 15] concerning how long he has lived in the residence and that he lives alone be GRANTED.

### C. Motion to Suppress Evidence from Apartment [Doc. 16]

#### i. Defendant's request for a *Franks* hearing

As an initial matter, in his motion, Defendant impliedly requests a *Franks* hearing provided for in *Franks v. Delaware*, 438 U.S. 154 (1978) [Doc. 16, ¶ 5]. A *Franks* hearing is an evidentiary hearing during which defendants are allowed to present evidence concerning the veracity of the challenged statements in the search warrant affidavit. *United States v. Kelley*, 596 F. Supp. 2d 1132, 1149 (E.D. Tenn. 2009), *aff'd*, 459 F. App'x 527 (6th Cir. 2012). This procedure is exceptional as typically a "[r]eview of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006). To qualify for such a hearing, "a defendant must make 'a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit and [ ] the allegedly false statement is necessary to the finding of probable cause.'" *United States v. Poulsen*, 655 F.3d 492, 504 (6th Cir. 2011) (citations omitted). Even if statements in the affidavit are false, "a *Franks* hearing is warranted" only "[i]f, when the alleged false statement is put aside, the affidavit no longer provides the court with probable cause." *Id*. at 504-05.

In this case, Defendant has not alleged facts sufficient to warrant a *Franks* hearing. Defendant only claims that law enforcement "deliberately and/or recklessly omitted information pertinent to the determination of probable cause. . ." but fails to identify what was omitted and how it would affect the probable cause determination. [Doc. 16, ¶ 5]. The Sixth Circuit has

"repeatedly held that there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement." *United States v. Neal*, 577 F. App'x 434, 450 (6th Cir. 2014) (citing *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008)). Indeed, "*Franks* is 'inapplicable to the omission of disputed facts,' except in the 'very rare case where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause.'" *United States v. Hanna*, 661 F.3d 271, 286 (6th Cir. 2011) (emphasis in original) (citing *Mays v. Dayton*, 134 F.3d 809, 816 (6th Cir. 1998)). Defendant has not made the necessary showing. Defendant's request for a *Franks* hearing will be DENIED.

ii.  **Defendant's challenge to the search warrant of the apartment**

The affidavit attached to the search warrant provides in pertinent part as follows:

On November 1, 2015 Kingsport Police Officers Cliff Ferguson and Jared Glover responded to 306 Spring Lane Apartment #5, Kingsport TN in reference to a complaint of a strong marijuana odor…. Upon arrival at the residence, Officer Glover went to the front door and Officer Ferguson went to the rear door. It appears as the rear door is used mainly to enter and exit the apartment as vehicle parking is at the rear. Officer Ferguson advised he could smell the odor of marijuana coming from the rear door of said residence. Officer Ferguson has been employed with the Kingsport Police Department for 24 years and has served 10 years in the Vice unit. Officer Ferguson is familiar with the odor of marijuana based on his experience and training.

Officer Ferguson advised he knocked on the door and there was a delay in anyone opening the door. Officer Ferguson advised it was 2-3 minutes before the subject walked out. Officer Ferguson was standing about 15 feet away and the subject walked out of the door and to the rear of a pickup truck which was approximately 12-15 feet from the rear door. Officer Glover advised that as he was standing at the front door, he could see into the apartment through a window beside the front door and he observed a white male put things into a box and hurriedly exit his view.

Officer Ferguson advised that a subject exited the apartment through the rear door. Officer Ferguson advised that as the subject exited the apartment, he could smell a very strong odor of marijuana coming from inside the apartment. Officer Ferguson advised he asked the subject, identified as Kristofer Orrick, if he had any weapons on him. Officer Ferguson advised that Mr. Orrick made a sudden move with his right hand to his waistband at which time Officer Ferguson took hold of his right arm and located a Ruger .380 caliber pistol in

14

a holster on his side. Officer Ferguson secured the firearm and asked if he had a permit to carry the firearm. Officer Ferguson advised he said no. Officer Ferguson placed handcuffs on Mr. Orrick and during a pat down located two containers in each front pocket that contained marijuana. Officer Ferguson also located a pipe commonly used to smoke marijuana in Mr. Orrick's right front pants pocket. Mr. Orrick was arrested for Going Armed, Simple Possession of Schedule VI, and Possession of Drug Paraphernalia. Officer Ferguson also found large sum of money in Mr. Orrick's left front pants pocket with a container of marijuana.

[Doc. 24-1, *Search Warrant*, pg. 4-5].

Defendant claims the search warrant lacks probable cause to justify a search of his apartment. Subsumed in that argument includes Defendant's claim that the search was illegal because the warrant was invalid, that the affidavit failed to establish a nexus between the property searched and criminal activity, and that the information was stale because the "items indicative of criminal activity had been removed from Defendant's premises and no allegation of ongoing criminal activity" was made. *See* [Doc. 16, ¶ 3].

The job of the judge presented with a search warrant application is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "There must, in other words, be a nexus between the place to be searched and the evidence sought." *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016) (citations omitted). "The connection between the residence and the evidence of criminal activity must be specific and concrete, not "vague" or "generalized." *Id.* at 382. If the affidavit does not present sufficient facts demonstrating why the police officer expects to find evidence in the residence rather than in some other place, a judge may not find probable cause to issue a search warrant. *Id.* Finally, whether an affidavit establishes a proper nexus is a fact-intensive question resolved by examining the totality of circumstances presented. *Id.*

15

In this case, the affidavit contains sufficient probable cause to believe that contraband would be found in Defendant's apartment. The affidavit indicates the officer, based on years of experience on the Kingsport Police Department, was familiar with the smell of marijuana, and that "he could smell the odor of marijuana coming from the rear door of said residence." The Sixth Circuit has held that the smell of marijuana coming from a home is sufficient by itself to establish probable cause for a search. See *United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002); *see also United States v. Yarbrough*, 272 F. App'x 438, 443 (6th Cir. 2007) ("the odor of marijuana at a residence contributes to a finding of probable cause"). The affidavit also indicates the police officer found "a large sum of money" on Defendant's person. The Sixth Circuit has readily acknowledged that large sums of cash are indicative of involvement in the drug trade. *United States v. Brooks*, 594 F.3d 488, 494-95 (6th Cir. 2010).

In *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016), *cert. denied*, (U.S. Oct. 3, 2016), the Sixth Circuit reiterated that "[t]he nexus between 'criminal activity' and the item to be seized is 'automatic[]' when the object of the search is 'contraband.'" *Id.* quoting *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967); *see also* Black's Law Dictionary 365 (9th ed. 2009) (defining "contraband" as "[g]oods that are unlawful to import, export, produce, or possess"). The Sixth Circuit in *Church* noted that "[m]arijuana is contraband because its possession and production is prohibited under federal law and the criminal laws of most states, including Tennessee's." *Id.* (citing 21 U.S.C. §§ 841, 844); Tenn.Code Ann. §§ 39-17-417, 39-17-418. In this case, the affidavit contains evidence of a nexus between criminal activity and the place to be searched. Indeed, the affidavit indicates that the officer smelled the marijuana emanating from Defendant's residence.

Defendant also argues that the information was stale because the only items indicative of criminal activity had been removed. "[I]n seeking to establish probable cause to obtain a search warrant, the affidavit may not employ 'stale' information, and whether information is stale depends on the 'inherent nature of the crime.'" *United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010) (quoting *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir.1998)). The affidavit recounts the officer's first-hand observations regarding criminal activity at the apartment the very day the warrant was executed. That information was unquestionably fresh. It is true that "[i]n the context of drug crimes, information goes stale very quickly because drugs are usually sold and consumed in a prompt fashion." *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009). In this case, however, the time frame is only a matter of hours.

Defendant's argument that "the only items indicative of criminal activity had been removed" is pure speculation as that assumes that the only marijuana the officer smelled was the marijuana the officer discovered in Defendant's pocket. The judge issuing the warrant need not engage in pure speculation and what ifs, but must rest his probable cause determination on the "totality of the circumstances." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983). In this case, the affidavit alleges that the officer smelled a strong odor of marijuana from the apartment. The judge issuing the search warrant could consider that fact along with the fact that marijuana, a firearm, and a large sum of money were also discovered on Defendant's person in making his probable cause determination. This argument is without merit.

Defendant also argues that any sworn testimony by the officer was not recorded and made part of the affidavit pursuant to Federal Rule of Criminal Procedure 41(d)(2)(C). Rule 41(d)(2)(C) states "[t]estimony taken in support of a warrant must be recorded by a court reporter or by a

17

suitable recording device, and the judge must file the transcript or recording with the clerk, along with any affidavit." Fed. R. Crim. P. 41(d)(2)(C). Defendant presented no evidence that any testimony was taken in support of this warrant. Indeed, it appears the search warrant was issued based solely on the attached affidavit. The Court finds this argument to be without merit.

Upon considering all of Defendant's arguments, the Court finds the search warrant to be valid, and accordingly, respectfully RECOMMENDS that Defendant's motion to suppress the evidence seized from his apartment be DENIED.[4]

SO ORDERED:

s/Clifton L. Corker
United States Magistrate Judge

---

[4] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1).